## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AVITA DRUGS, LLC and PHARMBLUE SERVICES, INC. and PHARMBLUE, LLC, | ) ) ) | Case No.: 2:21-cv-01000-WSH |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| SAMANTHA POSSERT, GABRIEL SANTRY, and WESTIN SMITH, | ) ) ) | |
| Defendants, | ) ) | |
| _____ | ) | |

## DEFENDANT WESTIN SMITH'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

**BUCHANAN INGERSOLL & ROONEY PC**

*/s/ Jaime S. Tuite*
Jaime S. Tuite
PA Bar No. 87566
Sydney Rochelle Normil
PA Bar No. 320989
Vanessa Wilson
PA Bar No. 308344

Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219-4413
Phone: 412-562-8800
Fax: 412-562-1041
jaime.tuite@bipc.com
sydney.normil@bipc.com
vanessa.wilson@bipc.com

*Attorneys for Defendants Gabriel Santry and Westin Smith*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................. 1

II. LEGAL STANDARD ....................................................................................... 2

III. ARGUMENT .................................................................................................... 2

    A. This Honorable Court Lacks Subject Matter Jurisdiction Because the DTSA Claim Fails ............................................................................... 2

    B. Plaintiffs Lack Standing to Enforce the Employment Agreement and Fail to State a Claim ...................................................................... 6

        1. Avita Drugs Lacks Standing to Enforce the Employment Agreement Because it is Not a Party and Did not Acquire the PharmBlue Plaintiffs ................................................................. 7

        2. PharmBlue Services Inc. Lacks Standing to Enforce the Employment Agreement because the Assignment is Effective Under Pennsylvania Law ........................................................ 8

        3. PharmBlue LLC Lacks Standing Because the 12 month Term Ended in 2019 ....................................................................... 13

    C. The Gist of the Action Doctrine Bars Plaintiffs' Tort Claims ............................ 14

        1. The Tortious Interference Claims Fail ...................................................... 15

        2. The Aiding and Abetting Fiduciary Duty Claims Fail Because the Allegations Arise from Possert's Agreement ........................................... 17

        3. Plaintiffs' Commercial Disparagement Claim Fails as a Matter of Law ........................................................................................... 18

    D. Plaintiffs Fail to Allege Harm as a Result of the Alleged Tortious Interference and Commercial Disparagement Claim ........................................... 19

    E. Plaintiffs Should Not Be Permitted to Amend ....................................................... 21

IV. CONCLUSION ................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acciavatti v. Restore Rehab., LLC*,
  2020 U.S. Dist. LEXIS 216642 (Pa. E.D. Nov. 19, 2020) .......................................6

*Al's Auto Inc. v. Hollander, Inc.*,
  No. 08-731, 2008 WL 4831691 (E.D. Pa. Nov. 4, 2008) .........................................7

*ALA, Inc. v. CCAIR, Inc.*,
  29 F.3d 855 (3d Cir. 1994).....................................................................................8

*All-Pak Inc. v. Johnston*,
  694 A.2d 347 (Pa. Super. Ct. 1997) ......................................................................10

*Alpart v. Gen. Land Partners, Inc.*,
  574 F. Supp. 2d 491 (E.D. Pa. 2008) .....................................................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................2

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. at 555 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...........................................2

*Bridgestone/Firestone, Inc. v. Lockhart*,
  5 F. Supp. 2d 667 (S.D. Ind. 1997) .........................................................................9

*Brown & Brown, Inc. v. Cola*,
  745 F. Supp. 2d 588 (E.D. Pa. 2010) .....................................................................17

*Centimark Corporation v. Christopher Bauer and DDP Roofing Services, Inc.*,
  Civ. A. No. 17-1149 (W.D. Pa. Nov. 3, 2017) ........................................................5

*Certainteed Ceilings Corp. v. Aiken*,
  2015 U.S. Dist. LEXIS 10881 (E.D. Pa. Jan. 29, 2015) ...................................15, 17

*Cunningham Lindsey U.S., Inc. v. Bonnani*,
  2014 U.S. Dist. LEXIS 55450 (M.D. Pa. 2014) ......................................................15

*DePuy Synthes Sales, Inc. v. Globus Med., Inc.*,
  259 F. Supp. 3d 225 (E.D. Pa. April 2017)............................................................15

*Dunkin Donuts Franchised Restaurants, LLC v. Claudia I, LLC*,
  No. 12-2010, 2013 WL 3716515 (E.D. Pa. Jul. 15, 2013) .......................................7

*Dykes v. Southeastern Pennsylvania Transp. Auth.*,
68 F.3d 1564 (3d Cir. 1995), *cert. denied*, 517 U.S. 1142 (1996) ...........................................8

*Elias Indus. v. Kissler & Co.*,
2021 U.S. Dist. LEXIS 99449 (W.D. Pa. May 26, 2021) ......................................................3, 5

*Gladstone Technology, Partners, LLC v, Dahl*,
222 F. Supp. 432 (E.D. Pa. 2016) ...........................................................................................7

*Herley Indus. v. R Cubed Eng'g*,
2021 U.S. Dist. LEXIS 11949 (E.D. Pa. Jan. 22, 2021) ..........................................................3

*Hess v. Gebhard & Co.*,
808 A.2d 912 (Pa. 2002) ...........................................................................................10, 11, 13

*KDH Elec. Sys. v. Curtis Tech. Ltd.*,
826 F. Supp. 2d 782 (E.D. Pa. 2011) .....................................................................................20

*Kimberton Healthcare Consulting, Inc. v. Primary PhysicianCare, Inc.*,
2011 U.S. Dist. LEXIS 139980 (E.D. Pa. 2011) .............................................................14, 15

*Lincoln Benefit Life Co. v. AEI Life, LLC*,
800 F.3d 99 (3d Cir. 2015) ......................................................................................................6

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .................................................................................................................7

*Mallet and Company Inc. v. Ada Lacayo, et al.*,
Civ. A. Nos. 20-3584, 21-1028 and 21,1029, 34 (3d Cir. Sep. 24, 2021) ................................5

*Medical Staffing Network, Inc. v. Ridgway*,
670 S.E.2d 321 (N.C. 2009) ....................................................................................................9

*Miller v. Native Link Constr., LLC*,
2016 U.S. Dist. LEXIS 121072 ...............................................................................................6

*Moore v. Angie's List, Inc.*,
118 F. Supp. 3d 802 (E.D. Pa. 2015) ......................................................................................6

*Neitzke v. Williams*,
490 U.S. 319 (1989) .................................................................................................................2

*Paige v. Faure*,
127 N.E. 898 (N.Y. 1920) ......................................................................................................11

*Pawloski v. Smorto*,
588 A.2d 36 (Pa. Super. Ct. 1991) ........................................................................................20

*Pershing LLC v. Fulcrum Capital Holdings LLC,*
2020 U.S. Dist. LEXIS 120492 (W.D. Tex. July 9, 2020) ...............................................11, 12

*Poskin v. TD Banknorth, N.A.,*
687 F. Supp. 2d 530 (W.D. Pa. 2009) .......................................................................7

*In re Schering Plough Corp. Intron/Temadar Consumer Class Action,*
678 F.3d 235 (3d Cir. 2012) .............................................................................6, 7

*Sierra Club v. Morton,*
405 U.S. 727 (1972) ........................................................................................7

*Stalley v. Catholic Health Initiatives,*
509 F.3d 517 (8th Cir. 2007) ..............................................................................7

*Teva Pharms. USA, Inc. v. Sandhu,*
291 F. Supp. 3d at 678 (3d Cir. 2018) .................................................................15

*Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.,*
530 F.3d 204 (3d Cir. 2008) ..........................................................................15

*Zerpol Corp. v. DMP Corp.,*
561 F.Supp. 404 (E.D. Pa 1983) .....................................................................19

**Statutes**

18 U.S.C. § 1836 ..............................................................................................2

18 U.S.C. § 1839(3) ........................................................................................2, 5

18 U.S.C. § 1839(5) ...........................................................................................3

**Other Authorities**

Fed. R. Civ. P. 11 ...........................................................................................22

Fed. R. Civ. P. 12(b)(1) ...................................................................................1, 6

Fed. R. Civ. P. 12(b)(6) ......................................................................................1

Defendant Westin Smith ("Smith"), by and through his undersigned counsel, Buchanan Ingersoll & Rooney PC, file this Brief in Support of his Motion to Dismiss Plaintiffs' Avita Drugs, LLC ("Avita Drugs"), PharmBlue Services, Inc. ("PharmBlue Inc."), and PharmBlue LLC's ("PharmBlue LLC") (collectively "Plaintiffs") Second Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## I.  <u>INTRODUCTION</u>

Plaintiffs' Second Amended Complaint lacks legal merit.  Despite repeated attempts to cure the blatant factual and legal defects, the Second Amended Complaint continues to come up short of stating cognizable claims.  First, this Court lacks subject matter jurisdiction over Plaintiffs' claims because Plaintiffs' allegations, even accepted as true, fail to establish that Smith misappropriated any trade secrets.  The allegations as to Smith with respect to an alleged receipt of Plaintiffs' "trade secrets" are paper thin because the information (i) is not confidential; (ii) is publicly available; and (iii) can be determined easily.  Furthermore, absent the federal trade secrets claim, this Court cannot maintain jurisdiction, especially where Plaintiffs have failed to allege the citizenships of two of the three Plaintiffs.

Second, all Plaintiffs lack standing to enforce the employment agreement against Smith.  Smith was never employed by Avita Drugs; any attempt to assign the employment agreement to PharmBlue Inc. is legally ineffectual; and Plaintiffs have not alleged that PharmBlue LLC possesses any legitimate protected business interest in the subject of the employment agreement.  Moreover, the term of the employment agreement expired prior to Smith's alleged conduct in the Second Amended Complaint.

Third, all of Plaintiffs' tort claims are barred by the gist of the action doctrine because the underlying non-solicitation and non-disparagement duties are purely contractual.  Pennsylvania bars attempts by Plaintiffs, as is the case here, to repackage employment agreement claims as

1

independent tort actions.  Lastly, Plaintiffs' allegations are either conclusory at best, and absent at worst.  Accordingly, Plaintiffs fail to state a claim for much of the relief sought.

## II.  <u>LEGAL STANDARD</u>

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly,* 550 U.S. at 556).  The purpose of a motion to dismiss is to "streamline [ ] litigation by dispensing with needless discovery and factfinding."  *Neitzke v. Williams*, 490 U.S. 319, 326-327 (1989).  A court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal citation omitted)).

## III.  <u>ARGUMENT</u>

### A.  **This Honorable Court Lacks Subject Matter Jurisdiction Because the DTSA Claim Fails**

The sole basis of the assertion of federal subject matter jurisdiction is a single claim against Smith and Santry[1] purportedly alleging a violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA").  ECF 49, ¶ 15.  Under the DTSA, a "trade secret" is a form or type of business or technical information that the owner has taken "reasonable measures" to keep secret.  18 U.S.C. § 1839(3).  The information must have "independent economic value" by virtue of its status as unknown or unascertainable information.  *Id*.  Misappropriation of a trade secret is the acquisition,

---

[1] Plaintiffs seek to dismiss Possert from this litigation.  Defendants Santry and Smith have opposed the manner in which Plaintiffs seek dismissal—by the entry of a permanent injunction that contains prejudicial statements of facts and conclusions of law.  If Possert was not a party to this litigation, the DTSA claims would only remain as to Santry and Smith.

disclosure, or unauthorized use of that information by improper means.  § 1839(5).  To withstand a motion to dismiss a DTSA claim, a plaintiff must plead that:  (1) they own information; (2) they have taken reasonable steps to keep it secret; (3) it derives economic value, actual or potential, from being kept secret; (4) it cannot be readily ascertained by proper means; and (5) those who cannot access the information would gain value from knowledge of it or its use.  *Elias Indus. v. Kissler & Co.,* 2021 U.S. Dist. LEXIS 99449, at *13 (W.D. Pa. May 26, 2021) "Part of what makes a trade secret distinguishable from other information is the degree to which the information is otherwise generally known within the trade."  *Herley Indus. v. R Cubed Eng'g*, 2021 U.S. Dist. LEXIS 11949 (E.D. Pa. Jan. 22, 2021)(granting motion to dismiss DTSA claim where plaintiff "makes no effort to allege that the information regarding its employees is *entirely* unknown to *any* member of the industry…").

Plaintiffs' DTSA claim fails as to Smith.  The DTSA claim is premised on Possert providing Plaintiffs' alleged trade secrets to Santry and not to Smith.  The Second Amended Complaint specifically states:

> 168.   Defendants acquired Plaintiff's trade secrets by improper means and without authorization.
>
> 169.  Defendants have used and/or disclosed Plaintiffs' trade secrets for the benefit of PRx, PhamarlytIQ, the other Defendants, and/or themselves, without express or implied consent. ***Specifically, Possert disclosed Plaintiffs' trade secrets to Santry, Smith and PharmalytIQ/PRx***, and Santry and Smith, in turn, used those trade secrets to compete unfairly with Plaintiffs, at PharmalytIQ's/PRx's behest.

ECF 49, ¶¶ 168-9.  There are only two allegations surrounding Possert and any alleged customer specific trade secrets:

> 133.   Possert also shared confidential information concerning Plaintiffs' MISTR clients with Santry.   ["(the MISTR list")]  MISTR is an entity that Plaintiffs and other contract

pharmacies work with to obtain referrals for new patients (among other things)…

144. After sending their June 11, 2021 letter to Possert, Plaintiffs conducted additional analysis of Possert's conduct during her last months as an employee. During that investigation, Plaintiffs learned that on March 5, 2021, more than 6 weeks before she would even submit her notice of resignation, Possert had joined a videoconference with one of Plaintiffs' customers for which she was responsible, "Customer X," along with Santry—who at that point had been employed by PharmalytIQ for approximately 11 months. There is no legitimate reason why Possert, while employed by Plaintiffs, would have joined a call with Customer X and Santry, an employee of a competitor.

145. Possert was aware that Customer X had recently had some concerned regarding its business relationship with Avita. While these concerns were more properly with a third party provider, and in any event were promptly addressed by Avita to Customer X's satisfaction, ***Possert used the knowledge of Customer X's concerns*** to assist PharmalytIQ/PRx and the other Defendants in convincing Customer X to do business with PRx…

ECF 49, ¶¶ 133, 144-5.

The Second Amended Complaint does not contain a single allegation that customer specific confidential information, let alone trade secrets, were provided by Possert to Smith. Plaintiffs allege vaguely allege that "Smith asked Possert at times if certain opportunities he was pursuing were also opportunities for Plaintiffs." ECF 49, ¶ 132. First, such information is not a trade secret. As Plaintiffs have already conceded, "the names of Plaintiffs' customers, and the beginning date of their contracts with Plaintiffs, are published on a website run by the United States Department of Health and Human Services, Health Resource & Services Administration…" ECF 49, ¶ 30. Also on this same website is a list of covered entities which are every contract pharmacies' prospective list. Plaintiffs fail to allege that Possert allegedly shared the identity of potential customers and it is undisputable that Plaintiffs' information regarding the identity of its actual and potential customers is publically available information and therefore, *per se* not a trade

secret. 18 U.S.C. § 1839(3) (requiring information "not being readily ascertainable through proper means" as definition of "trade secrets"); *Elias Indus.*, 2021 U.S. Dist. LEXIS 99449, at *15 (dismissing DTSA claim because the "Portal Information is readily ascertainable by proper means and does not qualify for trade secret protection under either DTSA or PUTSA").

There are no allegations that Possert shared Plaintiffs' pricing, contract end dates or any other information that it claims is confidential and that it allegedly takes steps to protect in the Second Amended Complaint. As this Court has advised, plaintiffs seeking to invoke the DTSA must provide factual allegations delineating the "where, why, when or how" of the alleged misappropriation of alleged trade secrets. *Centimark Corporation v. Christopher Bauer and DDP Roofing Services, Inc.,* Civ. A. No. 17-1149 (W.D. Pa. Nov. 3, 2017)(J. N. Barry Fischer). At a minimum, "the subject matter of the trade secret must be described 'with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Mallet and Company Inc. v. Ada Lacayo, et al.,* Civ. A. Nos. 20-3584, 21-1028 and 21,1029, 34 (3d Cir. Sep. 24, 2021). It is the trade secret owner that bears the burden of demonstrating its claimed secrets are protectable and are not general industry knowledge. *Id*. at 45. Plaintiffs fail to allege a DTSA claim as to Smith. Accordingly, the DTSA claim (Count I) should be dismissed with prejudice.[2]

Absent federal question jurisdiction, the only basis for federal subject matter jurisdiction would be diversity. Plaintiffs have not even alleged diversity jurisdiction. Moreover, Plaintiffs

---

[2] The dismissal of the DTSA claims necessitates the dismissal of the Pennsylvania Uniform Trade Secrets Act (Count II). *See Elias Indus.,* 2021 U.S. Dist. LEXIS 99449, at * 12-13 ("Although the DTSA and PUTSA have different wording, federal courts presented with trade secret claims under both statutes have distilled the definitions into a common operative definition of a trade secret…")

have failed to allege (1) the actual citizenship of Avita Drugs, LLC (merely alleging that it is a limited liability under the laws of Louisiana and has its principal place of business in Louisiana) or (2) *anything* about PharmBlue LLC. *See* ECF 49, ¶¶ 10-14 ("The Parties"). It is well established that the citizenship of a limited liability company is determined by the citizenship of all of its members, *Miller v. Native Link Constr., LLC*, 2016 U.S. Dist. LEXIS 121072, at *13 W.D. Pa. Sep. 8, 2016), and the failure to allege such citizenship is a basis for dismissal. *See Id.* at *21-22; *see also Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 n. 36 (3d Cir. 2015)("where the unincorporated association is the proponents of diversity jurisdiction, there is no reason to excuse it of its obligation to plead the citizenship of each of its members"); *Acciavatti v. Restore Rehab., LLC*, 2020 U.S. Dist. LEXIS 216642, at *4 (Pa. E.D. Nov. 19, 2020)("If a limited liability company is the proponent of diversity jurisdiction, it must allege the citizenship of each of its members"). Accordingly, the Second Amended Complaint should be dismissed because there are no allegations sufficient to support federal subject matter jurisdiction.

## B.     Plaintiffs Lack Standing to Enforce the Employment Agreement and Fail to State a Claim

"Article III of the Constitution limits the scope of the federal judicial power to the adjudication of cases or controversies" and it does so, in part, by requiring that each "litigant have standing to invoke the power of a federal court." *In re Schering Plough Corp. Intron/Temadar Consumer Class Action*, 678 F.3d 235, 244 (3d Cir. 2012) (citing U.S. Const., Art. III, §2). If a litigant lacks this "irreducible constitutional minimum" of Article III standing, the court shall dismiss its claim for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *See Moore v. Angie's List, Inc*., 118 F. Supp. 3d 802, 805 (E.D. Pa. 2015).

To establish standing, Plaintiffs bear the burden of establishing:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and

> particularized and (b) actual or imminent, not conjectural or
> hypothetical. Second, there must be a causal connection between the
> injury and the conduct complained of—the injury has to be fairly
> traceable to the challenged action of the defendant, and not the result
> of the independent action of some third party not before the court.
> Third, it must be likely, as opposed to merely speculative, that the
> injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted). "With respect to 12(b)(1) motions in particular, [t]he plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims . . . rather than facts that are merely consistent with such a right." *Id*. at 244 (citing *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007)); *see also, Lujan*, 504 U.S. at 563 ("[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured.")(quoting *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972)).

A claim for breach of a contract under Pennsylvania law requires three elements: "1) the existence of a contract, including its material terms; 2) breach of a duty imposed by the contract; and 3) resultant damages." *Gladstone Technology, Partners, LLC v, Dahl*, 222 F. Supp. 432, 440 (E.D. Pa. 2016). "In general, a person must be in privity of contract to sue for damages for breach of such contract." *Dunkin Donuts Franchised Restaurants, LLC v. Claudia I, LLC*, No. 12-2010, 2013 WL 3716515, at *3 (E.D. Pa. Jul. 15, 2013); *see also, Al's Auto Inc. v. Hollander, Inc.,* No. 08-731, 2008 WL 4831691, at *4 (E.D. Pa. Nov. 4, 2008). An entity that is not a party to a contract lacks standing to sue to enforce the terms of the contract. *Poskin v. TD Banknorth, N.A.*, 687 F. Supp. 2d 530, 543 (W.D. Pa. 2009).

### 1. *Avita Drugs Lacks Standing to Enforce the Employment Agreement Because it is Not a Party and Did not Acquire the PharmBlue Plaintiffs*

Avita Drugs is not a party to the Employment Agreement. ECF 49 -6. Contrary to Plaintiffs assertion in the Complaint, ECF 1, ¶¶ 88, 189 ("Following the PharmBlue Acquisition,

Smith became an employee of Avita"; "The benefits and obligations contained in the Smith Agreement accrued to Avita, as PharmBlue's successor in interest, after the PharmBlue Acquisition"), the Second Amended Complaint makes clear that Avita Drugs did not acquire PharmBlue Inc. or PharmBlue LLC. Accordingly, Smith has never been an employee of Avita Drugs. Avita Drugs lacks standing to sue to enforce the Employment Agreement.

**2.     *PharmBlue Services Inc. Lacks Standing to Enforce the Employment Agreement because the Assignment is Effective Under Pennsylvania Law***

PharmBlue Inc. is also not a party to the Employment Agreement. The Employment Agreement expressly states:

> This Conditions of Employment Agreement (the "Agreement") is made as of March 6, 2017 by and between Westin D. Smith ("Employee"), and PharmBlue LLC, a Delaware limited liability company ("PharmBlue"), on behalf of itself and its affiliates, including, without limitation, Rx Blue Star Solutions LLC, a Pennsylvania limited liability company and PharmBlue's direct subsidiary (PharmBlue and its affiliates, collectively referred to herein as the "Company").

ECF 49-6, at 1. As such, it is clear from the face of the Employment Agreement that Smith was an employee of PharmBlue LLC and any allegations in the Complaint which seek to undermine this position must be disregarded. *See ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n. 8 (3d Cir. 1994)("When there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control."); *see also Dykes v. Southeastern Pennsylvania Transp. Auth.*, 68 F.3d 1564, 1567 (3d Cir. 1995), *cert. denied*, 517 U.S. 1142 (1996) (a "plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment"). As such, the only parties to the Smith Agreement are Smith and PharmBlue LLC.

Further, PharmBlue Inc. cannot enforce the Employment Agreement on the basis that it is an "affiliate" of PharmBlue LLC. ECF 49, ¶ 88. Courts have frequently found restrictive

covenants and non-solicitation agreements to be unenforceable when an employer attempts to incorporate its "affiliates" into the agreement. *See Medical Staffing Network, Inc. v. Ridgway*, 670 S.E.2d 321, 327-28 (N.C. 2009) (holding restrictive covenants in employment agreement unenforceable because the 200 Agreements defines "MSN" to include "any parent, division, subsidiary, affiliate, predecessor, successor or assignee"); *Bridgestone/Firestone, Inc. v. Lockhart*, 5 F. Supp. 2d 667 (S.D. Ind. 1997) (holding noncompetition agreement unenforceable where the agreement refers to the employer as "FireStone Building Products Company and its affiliated companies (Firestone), calling it the 'most important flaw in the prohibition'").

Here, Plaintiffs allege (and the Employment Agreement confirms), that PharmBlue LLC was Smith's employer at the time the Employment Agreement was executed. *See* ECF 49, ¶¶ 88, 100; 49-6. Plaintiffs have not alleged any legitimate business interest PharmBlue LLC would have had in "preventing competition with, foreclosing the solicitation of clients and employees of, and protecting the confidential information of an unrestricted and undefined set of [PharmBlue LLC's] affiliated companies." *Medical Staffing*, 670 S.E. 2d at 328; *Bridgestone/Firestone*, 5 F. Supp. 2d at 683-84 (holding bar on working for any business which is in the same or similar business of employer and affiliates "extends far beyond any legitimate interest the employer might have in this case").

Despite the clear lack of any contractual relationship between Smith and PharmBlue Inc., Plaintiffs' attempt to bootstrap the breach of contract claim by asserting that (1) in January 2018, PharmBlue LLC transferred all of its employees to PharmBlue Inc. and as a result "PharmBlue LLC assigned the Smith Agreement to PharmBlue Inc." ECF 49, ¶¶ 77, 198. However, under Pennsylvania law, PharmBlue LLC's so-called "assignment" of the Employment Agreement was legally ineffectual and, as such, does not provide either PharmBlue Inc. with any rights thereunder.

It is well settled in Pennsylvania that restrictive covenants are not assignable absent explicit consent from the employee and explicit assignment language in the sales agreement. *All-Pak Inc. v. Johnston*, 694 A.2d 347 (Pa. Super. Ct. 1997); *Hess v. Gebhard & Co.*, 808 A.2d 912 (Pa. 2002). As the court in *All-Pak* explained:

> "Strong policy considerations underlie the conclusion that restrictive covenants are not assignable. **Given that restrictive covenants have been held to impose a restraint on an employee's right to earn a livelihood, they should be construed narrowly**; and absent and explicit assignability provision, courts should be hesitant to read one into the contract. Moreover, the employer, as drafter of the employment contract, is already in the best position to include an assignment clause within the terms of the employment contract. Similarly, a successor employer is free to negotiate new employment contracts with employees."

694 A.2d at 351 (emphasis added). Similarly, the *Hess* Court held:

> "[T]he better rule in deciding whether restrictive covenants are assignable is that the employment contract, of which the covenant is a party, is personal to the performance of both the employer and the employee, the touchstone of which is the trust that each has in the other. **The fact that an individual may have confidence in the character and personality of one employer does not mean that the employee would be willing to suffer a restraint on his employment for the benefit of a stranger to the original undertaking**. Therefore, we hold that a restrict covenant not to compete, contained in an employment agreement, is not assignable to the purchasing business entity, in the absence of a specific assignability provision, where the covenant is included in the sale of the assets. **In reaching this conclusion, we find that personal characteristics of the employment contract permeate the entire transaction.** Like the contract for hire, upon which the covenant was given, the employee's restrictive covenant is confined to the employer with whom the agreement was made, absent specific provisions for assignability."

808 A.2d at 922 (emphasis added). Here, Plaintiffs are attempting to contort the terms of the Employment Agreement in contravention of Pennsylvania law.

As described above, Pennsylvania law requires that the assignment of an employment agreement, and the restrictive covenants contained therein, requires the express consent of the

employee.  *See Hess*, 808 A.2d at 921.  Here, Plaintiffs do not assert that Smith ever agreed to the assignment of any of the covenants contained in the Smith Agreement.  Instead, when addressing the alleged "reorganization" of PharmBlue LLC, Plaintiffs simply state, without any specificity or factual support, that "PharmBlue LLC transferred all of its employees" to PharmBlue Inc. "and certain employment-related documents were assigned to PharmBlue Inc."  ECF 49, ¶ 77.  Apart from these conclusory assertions, Plaintiffs make no effort to establish how the restrictive covenants contained in the Smith Agreement were assigned to PharmBlue Inc. – because they were not.  Absent express authorization from Smith, the restrictive covenants contained in the Employment Agreement could not be assigned from PharmBlue LLC to PharmBlue Inc.  *See Hess*, 808 A.2d at 922 ("[A]n assignment of a right will not be effective if it purports to make a material change in the duties or responsibilities of the obligor, unless the obligor assents to such changes.").

Further, the Employment Agreement does not contain an assignment provision, let alone an explicit or express one.  Plaintiffs selectively plead that the Employment Agreement states "it 'shall be binding upon and inure to the benefit of the Company and its successors and assigns…'", ECF 49, ¶ 97, however the full provision states:  Miscellaneous; Binding Nature of the Agreement. This Agreement shall be binding upon and inure to the benefit of the Company and its successor and assigns and shall be binding upon Employee, Employee's heirs and legal representatives."  ECF 49-6, 11(c).  This language has been held <u>not</u> to be an assignment provision, especially in cases of contracts involving a relationship of personal confidence. *See Paige v. Faure*, 127 N.E. 898 (N.Y. 1920)(holding "provision in the contract that 'This agreement shall bind and benefit the respective successors and assigns of the parties hereto' was not a consent to assignment"). In *Pershing LLC v. Fulcrum Capital Holdings LLC,* 2020 U.S. Dist. LEXIS 120492 (W.D. Tex. July

9, 2020), it was held that the language of "shall inure to the benefits of its successors or assigns…"

is, again, not a consent to assignment:

> Still, Fulcrum points to language in the Client and Margin Agreements that it contends "contemplate[s] assignment":
>
>> The agreement shall cover individually and collectively all accounts that the undersigned may open or reopen with Pershing, and shall inure to the benefits of its successors or assigned, whether Pershing's merger, consolidation, or otherwise, and Pershing may transfer the accounts of the undersigned to its successors and assigns, and this agreement shall be binding upon the heirs, executors, administrators, successors and assigns of the undersigned.
>
> Even if the Client and Margin Agreements were assignable under New York law without Pershing's consent, this language would not indicate that Pershing intended the Client and Margin Agreement to be "freely and unilaterally assignable." **This provision merely states that the Client and Margin Agreements would bind the assigns in the event the contract were properly assigned**. Thus, the language in the Client and Margin Agreements binding future assigns does not endorse unilateral assignment, nor does it indicate that the Client and Margin Agreements were assigned to Fulcrum.

2020 U.S. Dist. LEXIS 120492, at *14-17 (emphasis added).

Here, the "Binding Nature of Agreement" provision in Smith's Agreement is similarly

lacking in its ability to constitute an assignment clause or represent Smith's consent to assignment.

Rather, in accordance with its plain meaning, the provision states that the Employment Agreement

would bind assigns *in the event the contract were properly assigned*. It does not give a right of

assignment, but merely states what should happen if the agreement (or the parties) provided

elsewhere that it could be assigned. This is especially the case where the agreement is one for personal confidence, i.e., between an employer and employee.[3]

Given the above, PharmBlue Inc. does not have standing to bring claims for breach of the restrictive covenants contained in the Smith Agreement, of which they were not and are not parties by virtue of assignment, or otherwise.

### 3. *PharmBlue LLC Lacks Standing Because the 12 month Term Ended in 2019*

PharmBlue LLC, the only actual party to the Employment Agreement, lacks standing and fails to state a claim for breach of contract. As alleged in the Second Amended Complaint, there was an alleged "reorganization" between PharmBlue LLC and PharmBlue Inc. where all of PharmBlue LLC's employees (apparently, including Smith), were transferred to PharmBlue Inc. ECF ¶¶ 77, 100. Following their "reorganization," Plaintiffs do not allege that PharmBlue LLC maintained any "legitimate interest" which was to be protected by the restrictive covenants or other terms in the Employment Agreement. *Hess*, 808 A.2d at 920-21. Plaintiffs allege that PharmBlue LLC no longer has any employees, ECF ¶ 77; therefore, it would arguably have no legitimate interest in prohibiting the solicitation of employees. Plaintiffs allege that all of PharmBlue LLC's employees are now employees of PharmBlue Inc. Plaintiffs do not allege that PharmBlue LLC has any customer relationships. As such, PharmBlue LLC should not be permitted to enforce the restrictive covenants contained in the Smith Agreement where it no longer has a legitimate, protectable interest in so doing. *Id*. at 923-24.

---

[3] If the "Binding Nature of the Agreement" were an assignment provision, that would grant Smith the right to assign his employment with PharmBlue LLC to anyone he so chooses. This further demonstrates how this provision is not an assignment provision.

Second, even if PharmBlue LLC retained a legitimate interest despite transferring and attempting to assign away its employees, according to the Second Amended Complaint, Smith became an employee of PharmBlue Inc. on January 1, 2018. ECF ¶ 100. Therefore, Smith ceased being an employee of PharmBlue LLC as of January 1, 2018. The provisions in the Employment Agreement relevant to this dispute provided that they were in effect for the "Term [of the employment] and for a period of twelve (12) months thereafter." 49-6 at 3 (Non-competition Covenant), 4 (Non-Solicitation Covenant). The restrictive covenant and non-solicitation (for both employees and customers) clauses of the Employment Agreement expired on January 1, 2019. The conduct forming the basis of Plaintiffs' Second Amended Complaint occurred no earlier than 2020. Accordingly, even if PharmBlue LLC could enforce the agreement—despite its attempts to assign it to PharmBlue Inc. – it cannot state a claim for breach of contract for the Employment Agreement.

### C.    The Gist of the Action Doctrine Bars Plaintiffs' Tort Claims

Plaintiffs allege a tortious interference with Possert's employment agreement (Count VI), tortious interference with Plaintiffs' customers (Count VII), commercial disparagement (Count V) and aiding and abetting Possert's breach of fiduciary duty (Count IX)[4]. Plaintiffs' tort claims should likewise be dismissed because they sound purely in contract.

The gist of the action doctrine "precludes plaintiffs from recasting ordinary breach of contract claims into tort claims." *Kimberton*, 2011 U.S. Dist. LEXIS 139980, at *18-19 (*internal citations omitted*). "The focus of an analysis under the 'gist of the action' doctrine is whether 'actions lie from a breach of duties imposed as a matter of social policy' or 'from the breach of

---

[4] Strangely, the count numbering in Plaintiffs' Second Amended Complaint jumps from Count VII (7) to Count IX (9). For consistency, Smith uses the same numbering.

duties imposed by mutual consensus.'" *See id.* at *19 (citing *Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 229 (3d Cir. 2008)); *see also Sandhu*, 291 F. Supp. 3d at 678 ("A claim for breach of fiduciary duty and a claim for breach of contract can only coexist if the fiduciary duty is based on duties imposed as a matter of social policy and . . . not based on a contractual agreement between the parties").  The gist of the action doctrine bars a tort claim when (1) the claim arises from a contract between the parties, (2) the duties breached were created by the contract, (3) liability derives from the contract, or (4) the success of the tort claim is wholly dependent upon the contract's terms.  *See Bonnani*, 2014 U.S. Dist. LEXIS 55450, at *15-16; *Certainteed Ceilings Corp. v. Aiken*, 2015 U.S. Dist. LEXIS 10881, at *25-26 (E.D. Pa. Jan. 29, 2015).

### 1.  *The Tortious Interference Claims Fail*

"A tortious interference with contract claim is barred by the gist of the action doctrine if it is not independent of a contract claim that is pled along with it."  *DePuy Synthes Sales, Inc. v. Globus Med., Inc.,* 259 F. Supp. 3d 225, 235 (E.D. Pa. April 2017) (*citing Alpart v. Gen. Land Partners, Inc.,* 574 F. Supp. 2d 491, 505 (E.D. Pa. 2008)).  *DePuy* is analogous and dispositive. In *DePuy*, the former employer plaintiff alleged that its former employees tortiously interfered with its customer relationships and with one another's employment contracts by soliciting one another to resign.  259 F. Supp. 3d at 243.  In dismissing both tortious interference claims on the basis of gist of the action, the court explained:

> In this case, plaintiff alleges that the Sales Consultants tortiously interfered with its customer relationships without privilege or justification and with a specific intent to injure plaintiff.  As described above, however, the Sales' Consultants' employment agreements contain a specific provision stating that, during their employment with DePuy Synthes and for a period of eighteen months after their last day of employment, they:

[S]hall not, directly or indirectly, contact, call upon, solicit business from, sell to, or render services to, or assist others in contacting, calling upon, soliciting business from, selling to, or rendering services to, any CUSTOMER: (a) in connection with the sale, support, service, or use of any product or service that resembles or competes with or that may be submitted for one that is being sold, under development or acquired by any COMPANY; (b) if [they] are working with, for, or as a COMPETITOR of any COMPANY; and/or (c) if [their] activities could damage or interfere with the CUSTOMER relationships of any COMPANY or divert business from such CUSTOMERS to a competitor.

Compl. ¶ 59. Thus, the Sales Consultants' alleged solicitation of and interference in plaintiff's existing and prospective business relations with plaintiff's customers remain "inextricably interwoven with the contractual duties at issue." In turn, any such tort allegation is governed purely by the employment agreements and barred by the gist of the action doctrine.

*** 

To the extent plaintiff brings this claim against the Sales Consultants alleging that they coerced one another to leave plaintiff's employment and work for Globus Medical, the claim is likewise precluded by the gist of the action doctrine. According to the complaint, the Sales Consultants' employment agreements contained a provision which provided, in part, "you agree that during our employment, you will not, directly or indirectly, . . . engage in recruitment or solicitation of other employees of your EMPLOYER or any COMPANY to join a COMPETITOR." Compl. ¶ 60. As the tortious interference claim is completely subsumed by this provision of the contract and has no independent basis in social policy, plaintiff may not raise it as a separate tort cause of action here.

Here, Plaintiffs' Second Amended Complaint suffers the same fate. Plaintiffs allege that the Employment Agreement prohibits the solicitation of former employees and Plaintiffs' customers. ECF 49, ¶ 92. Further, the breach of contract claim against Smith states that Smith breached the Employment Agreement: "by soliciting Plaintiffs' customers" (ECF 49, ¶ 201); "by soliciting Plaintiffs' employees to terminate their employment with Plaintiffs" (ECF 49, ¶ 202); and "by retaining and using Plaintiffs' information for any purpose outside the scope of his

employment" (ECF 49, ¶ 203). The tortious interference claim against Smith likewise states: "Smith induced, permitted or incentivized Possert to violate their contractual obligations to Plaintiffs, without jurisdiction, by among other things, encouraging and supporting their acceptance of employment with PRx, her solicitation of Plaintiffs' customers and employees, and her retention and/or misuse of Plaintiffs' confidential information." ECF 49, ¶ 218. The tortious interference claims are inextricably interwoven with the breach of contract claim. The duty clearly arises from the Employment Agreement and accordingly, the gist of the action bars these claims.

### 2. The Aiding and Abetting Fiduciary Duty Claims Fail Because the Allegations Arise from Possert's Agreement

Because Defendant Possert's fiduciary duty claim also cannot survive the gist of the action doctrine, Plaintiffs' aiding and abetting fiduciary duty claim likewise fails. "A breach of fiduciary duty claim is barred by the gist of the action doctrine if the fiduciary duty alleged is grounded in contractual obligations." In *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588 (E.D. Pa. 2010), the court dismissed a fiduciary duty claim because "the gravamen of Plaintiffs' breach of fiduciary duty/breach of loyalty claims is a breach of contract action." Where the allegations of fiduciary duty do not go beyond the particular obligations contained in the parties' contract, the claim should be dismissed. *Certainteed*, 2015 U.S. Dist. LEXIS 10881, at *24. For example, in *Certainteed*, as is the case here, the duty not to use or disclose confidential information or compete with the prior employer were duties that arose under, and were not independent of, the employment agreement. *Id.* at *25-32.

Here, the conduct that Plaintiffs allege constitute Defendant Possert's breach of fiduciary duty is simply a repackaging of its breach of contract claim against her. The "relationship of trust" is alleged to be from the Possert Agreement, ECF 49, ¶ 46, not an independent social duty. In fact, the Second Amended Complaint states that duty arose because of Possert's "role as an employee

of Plaintiffs." According to the Second Amended Complaint, Defendant Possert agreed to (1) keep in confidence and trust all confidential information (ECF 49, ¶ 47), (2) not to solicit other of Plaintiffs' employees or customers (ECF 49, ¶ 49), (3) not to act in way that could be expected to "affect adversely the Company's best interests, economic or otherwise" (ECF 49, ¶ 55). Further, she agreed not to compete, not to solicit and not to disclose confidential information both during the term of her employment and after. ECF 49-1, p. 2. The breach of contract claim alleges that Possert breached the Possert Agreement by (a) accepting employment with a competitor (ECF 49, ¶ 190), soliciting Plaintiffs' customers (ECF 49, ¶ 191), destroying all data on her company-issue computer (ECF 49, ¶ 192) and using Plaintiffs' information for any purpose outside of the scope of her employment (ECF 49, ¶ 193). Similarly, Plaintiffs' breach of fiduciary duty claim echoes the contractual allegations: (a) working for the benefit of PRx, (b) soliciting Avita's customers on PRx's behalf, (c) failing to return company property, and/or (d) destroying company data. ECF 49, ¶ 234. There is no duty at issue that does not stem from the Possert Agreement, therefore, there can be no breach of fiduciary duty claim. It is axiomatic that absent a valid breach of fiduciary duty claim, there can be no aiding and abetting fiduciary claim. Accordingly, the aiding and abetting claim should be dismissed with prejudice.[5]

### 3. *Plaintiffs' Commercial Disparagement Claim Fails as a Matter of Law*

A commercial disparagement claim under Pennsylvania law consists of the following four elements: (1) the statement is false; (2) the publisher either intends the publication to cause pecuniary lose or reasonably should recognize that the publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and, (4) the publish either knows that the statement is false

---

[5] While Plaintiffs can typically plead claims in the alternative, absent the Employment Agreement, there would be no existence for the tort claims alleged against him.

or acts in reckless disregard of its truth or falsity. *Zerpol Corp. v. DMP Corp.*, 561 F.Supp. 404, 409 (E.D. Pa 1983).

According to the Second Amended Complaint, Smith breached the Employment Agreement by "disparaging Plaintiffs to their customers." ECF 49, ¶ 204. Plaintiffs similarly plead a purported claim for commercial disparagement alleging that "Smith has made false statements regarding Plaintiffs and their business." ECF 49, ¶ 208. Here, Plaintiffs merely allege that the trade name – "Avita" – has suffered harm. ECF 49, ¶ 147 -155 ("The representation conveyed by Customer Y that *Avita* has been purchased was false"; "Customer Y informed Swierczewski that that it has been informed by the same third party that *Avita* was undergoing internal turmoil") (emphasis added). Plaintiffs fail to allege how Avita Drugs, PharmBlue LLC, or PharmBlue Inc. suffered harm relative to statements alleged made by Smith. The tort commercial disparagement claim is an attempted repackaging of the breach of contract claim. Accordingly, the gist of the action bars the tort claim.

    **D.**    **Plaintiffs Fail to Allege Harm as a Result of the Alleged Tortious Interference and Commercial Disparagement Claim**

Plaintiffs also fail to state a claim of tortious interference and commercial disparagement against Smith because they only plead conclusory allegations. The only facts alleged, even if taken as true, fail to state a claim. Because, as described above, the tortious interference claims are just a rehashing of the breach of contract claim, Smith addresses the underlying conduct that comprise the claims.

"Under Pennsylvania law,[6] a plaintiff claiming commercial disparagement must plead damages with considerable specificity by setting out 'the names of customers lost and financial loss resulting from the tort.'" *KDH Elec. Sys. v. Curtis Tech. Ltd.,* 826 F. Supp. 2d 782, 806 (E.D. Pa. 2011). Conclusory allegations are insufficient. *Id.* (Granting motion to dismiss commercial disparagement claim due to failure to allege pecuniary loss with the requisite specificity). Similarly, a claim for tortious interference requires an allegation of "actual damages [that] must result from the defendant's conduct" and harm in the form of "loss of the benefits of the contract or prospective relation or consequential, emotion or reputational losses resulting from the defendant's conduct." *Pawloski v. Smorto,* 588 A.2d 36, 40 (Pa. Super. Ct. 1991)(dismissing tortious interference claim where plaintiff did not allege failure to perform contract, termination of contract or any other loss of benefits from the contract).

There are only <u>two</u> customers in the entire Second Amended Complaint that is remotely linked to Smith—Customer Y and Z. Regarding Customer Y, Plaintiffs plead that allegedly Smith made false statements that purportedly disparaged Avita to Customer Y and as a result, interfered with their contractual relationship. However, Plaintiffs have retained Customer Y's business, ECF 49, ¶ 154. Plaintiffs do not allege any monetary loss that is a direct result of the alleged false statements. Plaintiffs attempt to shoehorn that they perhaps had to offer lower pricing to Customer Y, however, if Smith "offered Customer Y a better rate, prompting Customer Y to ask Plaintiffs to match it", that is not as a result of the alleged false statement, it is just lawful competition.

Similarly, Plaintiffs plead that Smith allegedly made false representations that purportedly disparaged Avita to Customer Z and as a result, interfered with their contractual relationship.

---

[6] While the tort claims should be dismissed under Pennsylvania's gist of the action doctrine, Smith reserves the right to argue that Illinois law should apply to the tort claims in the event they survive the motion to dismiss.

While the Complaint alleges that "Customer Z has recently become a new customer of PRx," ECF 49, ¶ 153, Plaintiffs allege no harm or damages as a result. There is no allegation of loss of monies because of Customer Z entering into another contract pharmacy.[7] There are no allegations that Customer Z no longer does business with Plaintiffs, terminated Plaintiffs' contract or Plaintiff otherwise loss some benefit from the contract (which was not exclusive). Accordingly, Plaintiffs cannot state a claim for tortious interference or commercial disparagement because Plaintiffs have not alleged a specific harm as a direct result of Smith's alleged conduct.

### E. Plaintiffs Should Not Be Permitted to Amend

The initial Complaint in this matter was filed on July 27, 2021 by Avita Drugs and PharmBlue, Inc. [ECF 1]. Importantly, Avita Drugs alleged that it acquired PharmBlue, Inc. On September 10, 2021, after filing a Joint Motion for Consent Order on Permanent Injunction and a Motion for Preliminary Injunction against Santry and Smith, based on facts alleged in the initial Complaint, Plaintiffs filed a Motion for Leave to File the First Amended Complaint, substituting PharmBlue LLC for Avita Drugs [ECF 25]. Four days later, on September 14, 2021, Plaintiffs, again, sought to amend the Complaint to include Avita Drugs and PharmBlue LLC, such that there were three plaintiffs and now three different complaints [ECF 28]. Pursuant to the Court's grant of an extension, Santry moved to dismiss the initial Complaint, arguing that a myriad of deficiencies in the Complaint warranted dismissal [ECF 31]. On September 21, 2021, Plaintiffs filed its First Amended Complaint [ECF 35], subjecting Smith to yet another complaint. On the same date, Plaintiffs, again, for the third time, moved for leave to file to provide yet another

---

[7] As is evident from the declaration of Customer X's CEO, the engagement of a new contract pharmacy does not necessitate a reduction of business to an existing pharmacy.

complaint [ECF 36]. Plaintiffs were ultimately granted leave to file what is now a fifth version of a complaint, the instant Second Amended Complaint. [ECF 49].

Despite five separate opportunities to sufficiently plead and amend their claims, Plaintiffs – the parties who are presumably in possession of all documents and information relevant to this action and subject to Rule 11 obligations – should not be granted a sixth attempt to draft a complaint stating viable claims against Smith. This action is clearly an attempt to seek expedited discovery without any basis. Remarkably, Plaintiffs' fifth attempt at a complaint remains shockingly deficient, as explained above. The allegations regarding which entity has an interest, their relationship to one another and each Defendant, and how they have allegedly been harmed based on Defendants alleged conduct, still remains unclear.

Plaintiffs should not be afforded endless "bites at the apple" to overcome the deficiencies in their Second Amended Complaint. The deficiencies here cannot be cured by further amendments for a very simple reason – Plaintiffs will never be able to sufficiently allege a claim against Smith.

## IV. __CONCLUSION__

Wherefore, Defendant Westin Smith, respectfully requests that this Honorable Court grant its motion to dismiss and dismiss the Second Amended Complaint in its entirety with prejudice.

DATED: October 15, 2021                    Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

*/s/ Jaime S. Tuite*
Jaime S. Tuite
PA Bar No. 87566
Sydney Rochelle Normil
PA Bar No. 320989
Vanessa Wilson
PA Bar No. 308344

Union Trust Building

501 Grant Street, Suite 200
Pittsburgh, PA 15219-4413
Phone: 412-562-8800
Fax: 412-562-1041
jaime.tuite@bipc.com
sydney.normil@bipc.com
vanessa.wilson@bipc.com

*Attorneys for Defendants Gabriel Santry and Westin
Smith*